UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| AARON W. JACKSON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:25-cv-00151-JPH-MJD |
| | ) |
| J. WADAS, | ) |
| | ) |
| Respondent. | ) |

**ORDER GRANTING IN PART MOTION TO SUPPLEMENT,
DENYING HABEAS PETITION, AND
DIRECTING ENTRY OF FINAL JUDGMENT**

Aaron W. Jackson is currently incarcerated at the Federal Correctional Institution in Terre Haute, Indiana. He filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, alleging that the Bureau of Prisons ("BOP") is miscalculating his sentence by failing to give him certain time credits available to him under the First Step Act of 2018 ("FSA"). Dkts. 1, 2. Respondent answered the petition. Dkt. 20. The Court held a hearing on the petition, after which Respondent supplemented his answer to the petition to address a new argument Mr. Jackson raised at the hearing. Dkt. 22. Also after the hearing, the Court received Mr. Jackson's motion to supplement, dkt. 21, which he mailed before the hearing. For the reasons stated below, the motion to supplement, dkt. [21], is **granted in part and denied in part**, and the habeas petition is **denied**.

    I.    **Background**

On August 3, 2023, the U.S. District Court for the Central District of Illinois sentenced Mr. Jackson to 60 months in prison and two years of

supervised release. *United States v. Jackson*, No. 3:21-cr-30066-SLD-JEH-1, dkt. 99 (C.D. Ill.) ("Cr. Dkt."). The court remanded Mr. Jackson to the custody of the United States Marshal. Cr. Dkt. 99. Mr. Jackson was not, however, immediately transferred to a BOP facility. Instead, he remained in a county jail until he was transferred to a BOP prison on February 23, 2024. Dkt. 20-2 ¶ 11.

As discussed in more detail below, under the FSA, inmates can earn certain time credits by completing qualifying programming and activities. The BOP deemed Mr. Jackson eligible to earn such credits once he arrived at a BOP facility but not during the time he spent at the county jail after he was sentenced. In his habeas petition, Mr. Jackson contended that this was an error that resulted in him losing almost 70 days of time credits to which he was entitled. Dkts. 1, 2; *see also* dkt. 21-1 at 1 (calculating that he lost 66 days of credits because of the error). During the hearing, Mr. Jackson also argued that, from September 18, 2024, through March 17, 2025, he should have been earning 15 days of FSA credits per month, but the BOP only gave him 10 days of FSA credits per month. The Court directed Respondent to supplement his answer to address that new argument, which he did, dkt. 22.

II. **Motion to Supplement**

In his motion to supplement, Mr. Jackson asks the Court to consider three exhibits: (1) his own handwritten calculation of the FSA time credits he should have received, dkt. 21-1 at 1 (Exhibit A); (2) a news article referring to a May 28, 2025, directive from the BOP Director instructing BOP staff to expand the use of home confinement to ensure that eligible inmates are transferred to home

2

confinement as soon as statutorily possible, dkt. 21-1 at 2 (Ex. B); *see also* "Federal Bureau of Prisons Issues Directive to Expand Home Confinement, Advance First Step Act," BOP Press Release (May 28, 2025), available at https://www.bop.gov/news/pdfs/20250528-home-confinement-expansioin.pdf (last visited June 11, 2025); and (3) a BOP document including a "Conditional Transition to Community Date" that Mr. Jackson contends means that he was statutorily eligible for transfer to community confinement on September 9, 2024, dkt. 21-1 at 3 (Exhibit C).

As to Exhibits B and C, Mr. Jackson states that the BOP Director has "directed all the Case Managers [in BOP prisons] to release the inmates [who have] passed their Conditional Transition to Community Date," and thus, that he should have been released to community confinement on September 9, 2024. Dkt. 21 at 1. He asks the Court for leave to amend his habeas petition to include this issue. He states that he prefers to be released from BOP custody entirely on June 13, 2025, based on the FSA credits he believes he has earned but notes that the BOP should have released him to community confinement in September 2024. *Id.* at 2.

At bottom, Mr. Jackson's motion to supplement raises an entirely new issue that was not presented in his habeas petition—whether the BOP should already have released him to home confinement based on his "Conditional Transition to Community Date." Injecting this issue into this case now would raise a new set of legal issues not implicated by the original habeas petition and which have not been briefed by the parties. The Court understands that, from

3

Mr. Jackson's perspective, being released to home confinement is effectively the same as being released from BOP custody and is sympathetic to his desire to return home as soon as possible. But, as a legal matter, being transferred to home confinement is not the same as being released from BOP custody at the end of a sentence. When an inmate is transferred to home confinement, he is still in the BOP's custody serving the sentence of imprisonment, although on home confinement rather than in a prison. *See, e.g.*, 18 U.S.C. § 3624(c)(1)–(2)) (the BOP "shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term . . . under conditions that will afford a reasonable opportunity to adjust and prepare for the reentry of that prisoner into the community," including home confinement); 18 U.S.C. § 3624(g)(2) (identifying home confinement as a type of prerelease custody).

So, unlike the FSA credit issue raised in Mr. Jackson's original habeas petition, the question of when an inmate may be transferred to home confinement does not implicate the length of his sentence of imprisonment. That distinction matters. It's not clear whether the BOP's failure to transfer an inmate to home confinement may be challenged in a habeas petition. *See Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991) (habeas corpus is the proper remedy if an inmate seeks a "quantum change in the level of custody" but not if he is "seeking a different program or location or environment"); *compare Smith v. Sproul*, No. 3:21-CV-00005-SPM, 2021 WL 3287796, at *2 (S.D. Ill. Aug. 2, 2021) (a challenge to the BOP's failure to transfer an inmate to prerelease custody in a

4

residential reentry center cannot be remedied through a habeas petition because it is concerned with the location of confinement, not the length of confinement), *with Carmichael v. Holinka*, No. 09-CV-388-SLC, 2009 WL 2512029, at *1 (W.D. Wis. Aug. 17, 2009) (a challenge to the BOP's failure to transfer an inmate to a residential reentry center is cognizable in a habeas petition because success would mean that the inmate is entitled to a quantum change in custody). The Court does not decide whether the BOP should already have released Mr. Jackson to home confinement based on his "Conditional Transition to Community Date" because that issue was not raised by Mr. Jackson's original habeas petition.

For all of these reasons, Mr. Jackson's motion to supplement, dkt. [21], is **granted** to the extent that the Court will consider his new argument about receiving 10 days of FSA credits per month instead of 15 and Exhibit A to his motion to supplement. The motion to supplement is **denied** to the extent that Mr. Jackson asks the Court to consider Exhibits B and C or to resolve the issue of whether he should already have been transferred to home confinement pursuant to the BOP memo and his "Conditional Transition to Community Date." If he wishes to pursue that issue, he must do so in a separate action.

### III.    Habeas Petition

#### A. Legal Standard

The Attorney General, through the BOP, is responsible for administering a federal prisoner's sentence, including the computation of sentence credit. *United States v. Wilson*, 503 U.S. 329, 335 (1992); *United States v. Walker*, 917 F.3d

5

989, 993-94 (7th Cir. 2019). An inmate can challenge the calculation of his sentence, including time credits, in a § 2241 petition. *Setser v. United States*, 566 U.S. 231, 244 (2012); *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973).

That said, a federal court may issue a writ of habeas corpus only if it finds the applicant "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A necessary predicate for the granting of federal habeas relief [to a petitioner] is a determination by the federal court that [his] custody violates the Constitution, laws, or treaties of the United States." *Rose v. Hodges*, 423 U.S. 19, 21 (1975).

### B. Discussion

Respondent argues that Mr. Jackson's petition should be denied because he failed to exhaust administrative remedies and also fails on the merits. Dkts. 20, 22. The Court addresses these issues in turn.

#### 1. **Exhaustion**

Before an inmate can seek relief under § 2241, he must exhaust the BOP's administrative remedy procedures. *Walker*, 917 F.3d at 993–94. The exhaustion requirement arises from common law. *Richmond v. Scibana*, 387 F.3d 602, 604 (7th Cir. 2004). A court may excuse the failure to exhaust if: (1) requiring exhaustion would cause prejudice because of the time required; (2) the agency cannot resolve the issue or grant the requested relief; (3) exhaustion would be futile because the agency is biased or has already determined the issue; or (4) substantial constitutional questions are raised. *Gonzalez v. Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004).

At the hearing, Mr. Jackson admitted that he did not exhaust administrative remedies before filing his habeas petition. He argued, however, that doing so would have been futile. Respondent did not directly address Mr. Jackson's futility argument, either in his answer brief or at the hearing. As explained below, the issue in this case is one of statutory interpretation. The BOP has resolved that issue in a regulation, which staff at FCI Terre Haute then applied to deny Mr. Jackson's requests for administrative remedies. That is, the BOP had already determined the issue, and it does not appear that Mr. Jackson could have gotten a favorable result even if he had completely exhausted. *See Gale v. Warden*, No. 24-13127, 2025 WL 223870, at *3 (E.D. Mich. Jan. 16, 2025) (collecting cases excusing the exhaustion requirement on futility grounds where the petitioner's claim required the court to decide whether a BOP regulation represented a proper interpretation of the FSA). The Court therefore finds that Mr. Jackson's petition is not barred by failure to exhaust and will consider the merits of the petition.

### 2. Merits

At issue in this case are certain time credits that inmates can earn under the FSA. In brief, Mr. Jackson argues that the BOP violated the FSA by considering him eligible to earn such credits only upon arrival at a BOP facility, February 23, 2024, rather than the date of his sentencing, August 3, 2023. He also argues that the BOP should have credited him with 15 days of FSA time credits for a period of several months while he was in BOP custody but only

7

credited him with 10 days. The Court begins with an overview of the relevant statutes and regulations and then discusses each of Mr. Jackson's arguments.

### a.    Relevant Law

The FSA allows inmates to earn time credits for "successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A). The Court refers to these credits as "FSA credits" and evidence-based recidivism reduction programming as "EBRR programming."

In relevant part, 18 U.S.C. § 3632(a) directs the development of a "risk and needs assessment system," which shall be used to:

> (1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;
>
> ***
>
> (3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);
>
> (4) reassess the recidivism risk of each prisoner periodically . . . ;
>
> (5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination . . . .

18 U.S.C. § 3632(a).

Section (b), in turn, provides:

> The System shall provide guidance on the type, amount, and intensity of evidence-based recidivism reduction programming and productive activities for each prisoner, including—

8

> (1) programs in which the Bureau of Prisons shall assign the prisoner, according to the prisoner's specific criminogenic needs; and
>
> (2) information on the best ways the Bureau of Prisons can tailor the programs to the specific criminogenic needs of each prisoner so as to most effectively lower each prisoner's risk of recidivism.

18 U.S.C. § 3632(b).

Inmates who "successfully complete[] evidence-based recidivism reduction programming or productive activities" can earn 10 days of FSA credits for every 30 days of "successful participation" in EBRR or productive activities. 18 U.S.C. § 3632(d)(4)(A)(i). The amount of credits available per month increases to 15 days if the inmate has a low or minimum recidivism risk and "over the course of 2 consecutive [recidivism risk assessments] has not increased their risk of recidivism." 18 U.S.C. § 3632(d)(4)(A)(ii).

The BOP promulgated regulations implementing the FSA. As relevant here, 28 C.F.R. § 523.41(c)(2) states that "successful participation" in EBRR or productive activities "requires a determination by [BOP] staff that an eligible inmate has participated in the EBRR programs or [productive activities] that the [BOP] has recommended based on the inmate's individualized risk and needs assessment."

The text of the FSA also provides that a prisoner may not earn credits for participation in programs completed prior to enactment of the FSA in 2018 or "during official detention prior to the date that the prisoner's sentence commences under section 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(ii). Section 3585(a), in turn, provides that a "sentence to a term of imprisonment commences on the

9

date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).

On the issue of when an inmate becomes eligible to earn FSA credits, the applicable regulation—28 C.F.R. § 523.42(a)—provides, "An eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated [BOP] facility where the sentence will be served)." 28 C.F.R. § 523.42(a). Under Section 6 of BOP Program Statement 5410.01 CN-2, "First Step Act 2018—Time Credits: Procedures for Implementation of 18 U.S.C. § 3632(d)(4)," the BOP interprets this regulation to mean that an inmate cannot earn FSA credits "when not in Bureau custody, including when in U.S. Marshals Service custody prior to arriving at their designated facility."[1]  That is, the BOP considers inmates ineligible to earn FSA credits until they arrive at a BOP facility, even if their sentence has already "commenced" under § 3585(a).

### b.     Start Date of Eligibility for FSA Credits

Pursuant to 28 C.F.R. § 523.42(a) and Program Statement 5410.01 CN-2, the BOP did not consider Mr. Jackson eligible to earn FSA credits until he arrived at his designated BOP facility on February 23, 2024, because that is when his sentence "commenced" under the regulation. Dkt. 1-1 at 7, 9 (responses to Mr. Jackson's administrative remedy requests). Mr. Jackson contends that the

---

[1] Program Statement 5410.01 CN-2 became effective March 10, 2023, and is available at https://www.bop.gov/PublicInfo/execute/policysearch?todo=query#  (last visited June 11, 2025).

10

regulation conflicts with the plain language of the FSA, which incorporates § 3585(a)'s provision that a defendant's sentence "commences" when he "is received in custody awaiting transportation to . . . the official detention facility at which the sentence is to be served." He notes that multiple district courts have adopted his position and relies primarily on the Eastern District of Michigan's decision in *Gale v. Warden*, 2025 WL 223870 (E.D. Mich. Jan. 16, 2025). He argues that, if the BOP had considered him eligible to earn FSA credits upon sentencing on August 3, 2023, he would have earned approximately 70 additional days of FSA credits. *See* dkt. 21-1 at 1 (calculating that he would have earned 66 days of credits during this time period).

Respondent argues that the Court need not decide whether the regulation at issue is valid because, even Mr. Jackson was eligible to earn FSA credits from his date of sentencing, there is no evidence that he met the requirements to actually earn such credits—namely, participating in approved EBRR or productive activities. Dkt. 20 at 9–10. Respondent also argues that Mr. Jackson could not have earned FSA credits before he arrived at a BOP facility because, by statute, the credits are tied to completing approved programming recommended by the BOP based on the inmate's recidivism risk level, which is not determined until intake. *Id.* at 10.

At the hearing, Mr. Jackson represented that, while he was incarcerated at a county jail after sentencing, he participated in classes and worked as an orderly. He stated that he tried to get documentation from the jail but was not able to do so. He conceded that his activities did not qualify as EBRR

11

programming under the statute, but noted that he was still engaged in productive activity and represented that he would have done EBRR programming if it was available to him. He also argued that courts—including the *Gale* court—have held that inmates do not have to participate in EBRR to earn FSA credits.

The Court accepts Mr. Jackson's representations that he participated in classes and worked as an orderly at the jail where he was incarcerated after sentencing and commends him for those efforts. The Court also does not doubt that Mr. Jackson would have participated in BOP-approved EBRR or productive activities sooner had they been available to him.

The FSA is a relatively new law, and the Seventh Circuit has not yet addressed whether, and in what circumstances, a federal inmate can earn FSA credits before arrival at his designated BOP facility. While some courts have found that 28 C.F.R. § 523.42(a) is invalid because it conflicts with the FSA, *see Gale*, 2025 WL 223870, at *4 (collecting cases), here the Court need not decide if the regulation is invalid. Assuming for the sake of argument that the regulation is invalid and Mr. Jackson was *eligible* to earn FSA credits on the date of his sentencing, there is no evidence that he *actually earned* any such credits before he arrived at a BOP facility. Thus, he has not demonstrated that the BOP is denying him time credits to which he may be entitled.[2]

---

[2] Some courts have explicitly decided that § 523.42(a) is invalid but then gone on to deny the petitioner's habeas petition because there was no evidence that the petitioner actually completed eligible EBRR or productive activities before arriving at a BOP facility. *See, e.g.*, *Stevens v. Jacquez*, No. 3:23-cv-01482-AA, 2024 WL 3200546 (D. Ore. June 25, 2024). Here, the Court declines to decide whether § 523.42(a) is invalid because resolution of that issue does not affect the outcome of this case. There are cases where the validity of the regulation could make a difference. For example, in *Jackson v. Doerer*,

12

The FSA mandates that FSA credits are earned only for "successful participation in evidence-based recidivism reduction programming or productive activities." 18 U.S.C. § 3632(d)(4)(A)(i). And the applicable regulation states that "successful participation" in such programming requires a determination by BOP staff that the inmate participated in programming recommended by BOP staff based on his individualized risk and needs assessment. 28 C.F.R. § 523.41(c)(2). Here, Mr. Jackson has not shown that the classes he attended or the work he did while incarcerated at a jail before his arrival at a BOP facility qualify as activities recommended by BOP staff based on his risks and needs assessment. Nor does he argue that the regulation defining "successful participation" in EBRR or productive activities is invalid.

Moreover, the text of the FSA supports Respondent's position that Mr. Jackson did not earn FSA credits before arriving at a BOP facility. The statute requires the BOP to develop a system that would be used to determine the recidivism risk of each inmate "as part of the intake process," determine the type and amount of EBRR appropriate for each inmate, assign the inmate to such programming after considering his criminogenic needs, and reassign the inmate to appropriate EBRR or productive activities when his recidivism risk level is reassessed. 18 U.S.C. § 3632(a)(1), (3), (4). The entire process of assigning EBRRs

---

No. 5:24-cv-01353-ADS, 2024 WL 4719489 (C.D. Cal. Nov. 7, 2024), the petitioner was denied FSA credits for BOP-approved EBRR programming he completed while incarcerated at a BOP facility because the facility was not his "designated" facility. That is, there was no dispute that he had done what he needed to do to earn FSA credits. The only dispute was whether he was *eligible* to earn them and, thus, whether the regulation was valid. Here, the Court refrains from deciding whether § 523.42(a) is valid because that issue is not outcome determinative.

13

and productive activities that can then be completed to earn FSA credits is tied to completion of the recidivism risk assessment, which, by statute, cannot occur until intake into the BOP.

Here, Mr. Jackson participated in classes and worked as an orderly at the county jail before the BOP intake process. As a result, even if he was eligible to earn FSA credits starting on the date of his sentencing, he has not shown that he actually earned any such credits before he arrived at a BOP facility. *See Freeman v. Lillard*, No. 3:24-cv-02227-GCS, 2025 WL 1358556, at *3 & n.1 (S.D. Ill. May 9, 2025) (declining to decide whether § 523.42(a) is invalid because there was no evidence that the petitioner successfully completed EBRR or productive activities before he arrived at a BOP facility and noting that he could not have done so because the BOP did not conduct an assessment determining appropriate programming until he came into BOP custody).

Finally, Mr. Jackson argues that in invalidating 28 C.F.R. § 523.42(a), some courts have categorically dispensed with the necessity of actually participating in qualifying EBRR or productive activities to earn FSA credits. But the authorities he cites don't show that. For example, in *Gale v. Warden*, 2025 WL 223870 (E.D. Mich. Jan. 16, 2025), the court held that § 523.42(a) conflicted with the FSA. The court therefore directed the BOP to recalculate the petitioner's credits starting on the date he was sentenced, including considering whether the petitioner "met the requirements for First Step Act programming and activities

14

during the period from the date of his sentencing until the date of his arrival at the designated BOP facility, and then recalculate [his] time credits." *Id.* at *4.[3]

In summary, Mr. Jackson has not shown that he earned FSA credits before he arrived at a BOP facility. The Court therefore need not decide whether the BOP erred in deeming Mr. Jackson ineligible to earn FSA credits until he arrived at a BOP facility—regardless of the answer, he's not entitled to relief. That is, he has not shown that the BOP has improperly denied him any FSA time credits for the time period before he arrived at a BOP facility.

### c.     10 Days of Credits vs. 15 Days of Credits

Mr. Jackson also argues that the BOP improperly denied him some FSA credits after he arrived at a BOP facility. By way of background, during the BOP intake process, Mr. Jackson was given a medium recidivism risk rating. Dkt. 22-1 ¶ 6. On September 18, 2024, his recidivism risk level was reduced to low. *Id.* ¶ 7. His next assessment was on December 17, 2024, at which point his recidivism risk level was still low. *Id.* His recidivism risk level was also still low at the end of his next assessment on March 17, 2025. *Id.* At that point, the BOP

---

[3] In *Gale*, the court granted the habeas petition and ordered the BOP to recalculate the petitioner's FSA credits without first determining that the petitioner had, in fact, earned additional FSA credits. It is not clear that the respondent in that case argued, as did Respondent in this case, that the petitioner had not actually earned any FSA credits before arriving in BOP custody. Moreover, to the extent that *Gale* or any other similar decision can be read to suggest that a habeas petition should be granted based simply on a finding that § 543.42(a) is invalid, the Court respectfully disagrees. Habeas relief is available only if the BOP's alleged error is actually causing the petitioner to be held in custody too long. Making that determination requires an assessment of whether the petitioner actually earned any FSA credits during the period at issue in the petition.

15

began giving him 15 days of FSA credits for every month of successful participation in eligible programming or activities. *Id.* ¶ 8.

At the hearing, Mr. Jackson argued that the BOP should have started giving him 15 days of FSA credits per month on September 18, 2024, which is the date his recidivism risk level moved to low. But the statute allows an inmate to earn 15 days of FSA credits per month *only if* he has a low or minimum recidivism risk level "*and* . . . over 2 consecutive assessments, has not increased [his] risk of recidivism." 18 U.S.C. § 3632(d)(4)(A)(ii) (emphasis added). Here, the BOP started giving Mr. Jackson 15 days of credits per month when he completed two consecutive assessment periods at a low recidivism risk level, which satisfies the statute.

Accordingly, Mr. Jackson has not shown that the BOP violated the FSA by giving him only 10 days of FSA credits per month from September 18, 2024, through March 17, 2025.

### IV.  Conclusion

The Court commends Mr. Jackson for his thorough and cogent presentation of the complex issues implicated by his situation. As explained above, though, the Court can grant Mr. Jackson habeas relief only if he shows that he is being held in custody in violation of the Constitution, and he has not done so.

16

Accordingly, for the reasons stated above, Mr. Jackson's motion to supplement, dkt. [21], is **granted in part and denied in part** as stated in Section I. His habeas petition is **denied**. Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 6/13/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

AARON W. JACKSON
75830-509
TERRE HAUTE - FCI
TERRE HAUTE FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeffrey.preston@usdoj.gov